HONEY CREEK DRAINAGE DISTRICT, RESPONDENT, v. G. E. SAMPSON ET AL., DEFENDANTS; R. R. CALKINS, APPELLANT.[*]

Kansas City Court of Appeals. April 2, 1928.

[*]Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2868, p. 898, n. 86; Assignments, 5CJ, section 65, p. 901, n. 65; section 116, p. 943, n. 46.

*John A. Flournoy, L. A. Warden, H. J. Bain* and *R. E. Kavanaugh* for respondent.

*Groves & Watkins* for appellant.

WILLIAMS, C.—This case comes to this court from the circuit court of Grundy county.

Defendant and interpleader, R. R. Calkins, appeals from a judgment allowing respondents, codefendants, various amounts of interpleas filed herein.

The facts about which the controversy arose are; that the Honey Creek Drainage District on November 18, 1921, entered into a contract with one G. E. Sampson, for the construction of a drainage

ditch in Grundy county, Missouri. The Iowa Bonding & Casualty Company, executed the contract in conjunction with the defendant, G. E. Sampson, guaranteeing the performance thereof.

The Southern Surety Company took over the business and assets of the Iowa Bonding & Casualty Company prior to the institution of the suit. The remaining defendants are creditors of the defendant, G. E. Sampson.

The defendant and appellant, R. R. Calkins, loaned G. E. Sampson certain funds and took his note. This note was reduced to judgment in October, 1924.

The material parts of the contract as gathered from the abstract of the record furnished by the appellant and the additional abstract of the record furnished by respondent are as follows:

"Paying Laborers. The contractors further agree that they will pay for the work and labor of all laborers, teamsters, teams and wagons employed on the work, and for all machinery, tools, and material used thereon. Such payment to be a condition precedent to the right of said contractor to demand final payment on completion of contract.

"Monthly and Final Payment for Work Done. Once each month the engineer shall examine the work and if found complete according to the plans, specifications, contract and instructions, he shall issue an estimate for the work so completed showing the amount due since the last proceding estimate, and shall certify the same to the board of supervisors, who shall pay eighty-five per cent of said monthly estimate until the amount retained is equal to $5000 on Honey Creek Main Ditch, and the remaining $5000 shall be paid as follows: $5000 on final completion and acceptance of Honey Creek Main Ditch.

Guarantee of Third Party. The third party to this contract hereby guarantees that the contractor will faithfully perform all the covenants and agreements hereinbefore mentioned; that said contractor will pay all bills for machinery, materials, tools, labor and appliances and further that they will hold and save harmless said drainage district from any damages or actions against it by reason of the neglect or failure of said contractor to perform all the acts herein required.

"Payment for work done under this contract will be made each month in monthly payments on estimates furnished by the engineer. Fifteen per cent of estimates to be retained up to $5000 until final completion and acceptance of work.

"The contractor shall save the district, its officers and agents harmless . . . from all suits and claims for labor done or material furnished in the performance of the work under these specifications.

"The contractors further agree that they will pay for the work and labor of all laborers, teamsters, teams and wagons employed on the

work, and for all machinery, tools, and material used thereon. Such payment to be a condition precedent to the right of said contractor to demand final payment on completion of the contract.

"Before final payment shall be required to be made by the drainage district under this contract the contractors shall acknowledge and deliver under their hands and seals, a release and discharge of and from any and all claims and demands for, and in respect of all matters and things growing out of or connected with this contract or the subject-matter thereof, and from all claims and demands whatsoever.

"Before final payment shall be required to be made by the drainage district under this contract, the contractors shall acknowledge and deliver, under their hands and seals, an affidavit that they have paid for all labor, material and supplies used or contracted for on the work.

"The prices herein named are to cover all expenses of every kind involved in, or incidental to the completion of the contract, including all claims that may arise from any cause in the performance of the work hereunder.

"The third party to this contract hereby guarantees that the contractor will faithfully perform all the covenants and agreements hereinbefore mentioned; that said contractor will pay all bills for machinery, materials, tools, labor and appliances and further that they will hold and save harmless said drainage district from any damages or actions against it. by reason of the neglect or failure of said contractors to perform all the acts herein required."

At the trial an agreement was entered into as follows:

"It is stipulated and agreed by and between interpleaders herein that the claim of A. D. Barton was reduced to judgment in the circuit court of Grundy county, Missouri, and amounts to the sum of $579.03; said judgment was founded on a debt due and owing by G. E. Sampson to the said A. D. Barton, on account of funds advanced by the said Barton to the said G. E. Sampson for the purpose of paying labor, also money paid at the request of the said G. E. Sampson to laborers engaged in said project, in the construction of the Honey Creek Ditch, and that thereafter by oral assignment of the said G. E. Sampson, and that if the said G. E. Sampson were present in court would testify that he did by oral assignment assign a sufficient part of the funds due and owing by the Honey Creek Drainage District to the said A. D. Barton for the purpose of paying the amount due the said A. D. Barton, and that the said G. E. Sampson would further testify he told the said R. R. Calkins prior to the execution of the assignments from Sampson to Calkins of the partial assignment to the said claimant Barton; and that the said C. E. Sampson if present would further testify that at the time of making said assignment

or assignments in evidence that he told R. R. Calkins that the A. D. Barton claim must first be paid out of said funds, and that the said Sampson would further testify that R. R. Calkins agreed at that time that all assignments were taken subject to the A. D. Barton claim, and that the said G. E. Sampson would testify, if present, that the consideration for all of said assignments are for the money due, after the payment of said Barton claim.

"It is agreed that the amount of the claim of the defendant Standard Oil Company is correct in the amount of $423.72; that the items of said claim were oil, gas and lubricating oils used by the defendant, Sampson on his machinery in the construction of the work under the contract.

"It is agreed that the claim of the Quincy, Omaha & Kansas City Railway Company is correct, in the amount of $73.69; that said claim was reduced to a judgment in the circuit court of Grundy county, Missouri, at the June term, 1925; that the consideration of said claim was freight charges for coal carried by the railway company and delivered to said Sampson and used in his machinery in the construction of the ditch under the contract.

"It is agreed that the amount of the claim of the Trenton Mining Company is correct in the amount of $162.52; that said amount was for coal supplied to the said G. E. Sampson and used by him in the operation of the machinery in the construction of the ditch under the contract.

"It is agreed that the amount of the claim of the Qunther Hardware Company, incorporated, is correct in the amount of $177.80, and that the amount represents dynamite fuse and caps furnished to the said G. E. Sampson, and used by him in the construction of the ditch.

"It is agreed that the claim of the Jameson Machine Company is correct in the amount of $27.80, for repairs to machinery used in the construction of the ditch.

"It is agreed that the claim of the Leschen Company is correct in the amount of $120.58 and that the same was for wire rope used on the drag line while constructing said ditch.

"It is agreed on behalf of the Trenton Hardware Company, interpleader, that the account set out in said interplea was furnished at the time and for the purposes set out in said interplea, and that the same is just and correct in the amount of $126.22, and that demand was made, as therein stated, and that said account was to be paid in thirty days from date and that it was understood and agreed between defendant Sampson and this interpleader that said G. E. Sampson was to pay for said account out of the funds accruing to him for the construction work in the Honey Creek Drainage District of Grundy county, Missouri; that the amount specified in said itemized statement; consisting of dynamite and fuse, were used for digging said

ditch, and that the other supplies were used in and about the camp of the said G. E. Sampson for the construction work on said, ditch.

"It is further agreed that the claim of the Gardner-Flesher Coal Company, interpleader herein, is correct in the amount of $84.20, and is based on an account for coal sold to the defendant Sampson for use in the drag line that actually dug the ditch under the contract in evidence.

"That the claim of L. W. LeHew is true and correct in the amount of $12.30 and that five dollars thereof is for a log chain used in the construction of said ditch; that four dollars thereof is for pasture of two horses used on the construction of the ditch; that $1.80 is for food supplied men while working on the ditch, and that $1.50 thereof is for common labor used in the construction of the ditch.

"It is agreed that the bill of interpleader, Ben Cox, amounting to $45 was for material and pipes for pumping water to the boilers while constructing said Honey Creek Drainage Ditch, and said pumping was a necessary part of the construction of said drainage ditch.

"It is agreed that the bill of Charles Nuff, amounting to $66.72 was for bread used at wholesale prices, and consumed by G. E. Sampson and his employees, and was part of the food consumed by the men while constructing the ditch, and was a necessary part of the material used to construct said ditch."

After a trial it was ordered by the chancellor that all the above claims be paid and the remainder turned over to R. R. Calkins, appellant herein. From that judgment, after an unsuccessful motion for a new trial, R. R. Calkins has appealed.

As this is an equity case, the court will review the evidence and arrive at its own conclusion, giving deference, however, to the finding of the chancellor.

The first question to be determined, is whether or not the assignment to Barton is valid. An assignment may be written or oral. [Johnson County v. Bryson, 27 Mo. App. 341; Whiteside v. Tall, 88 Mo. App. 168.]

It is contended that there is not sufficient evidence to support the finding in favor of Barton. We find the admission as to the testimony of Sampson, and in the testimony of Barton the following question was asked and answers given to-wit:

Prior to August 30, 1923, did G. E. Sampson assign sufficient funds to you to take care of your account? "Yes, sir, he told me the fifteen per cent was always held back to take care of accounts and he would see I got that much out of it."

The statement of Barton is not entirely clear. If he answered the question, "Yes, sir," and then went on in explanation, it would appear that he testified directly to the assignment.

The chancellor saw the witness upon the stand and heard the testimony. We do not feel that we should disagree with him as to the meaning of the above. We decide this point against the appellant.

It is contended by the appellant herein, that but a part of the contract is necessary to a determination of the case. We think, however, that all the contract must be taken into consideration and the intent of the parties gathered. In the contract it is recited—

"The contractors further agree that they will pay for the work and labor of all laborers, teamsters, teams and wagons employed on the work, and for all machinery, tools, and material used thereon."

Again . . . "a release and discharge of and from any and all claims and demands for, and in respect of all matters and things growing out of or connected with this contract or the subject-matter thereof, and from all claims and demands whatsoever."

Again, "The prices herein named are to cover all expenses of every kind involved in, or incidental to the completion of the contract, including all claims that may arise from any cause in the performance of the work hereunder."

The question then presents itself whether or not the contract was intended by the party to be broader than the terms of the lien law. Appellant with great care, industry and diligence, has collected cases from various jurisdictions. No case, however, is cited in which provisions appear such as are in the contract in the case at bar.

In the case of Hilton v. Construction Co., 202 Mo. App. 672, l. c. 677, the court said:

"In addition, the said contract and bond provides, that the Universal Construction Company shall pay the proper parties all amounts due for material and labor used and employed in the performance thereof."

Under that clause it was held that the terms of the lien law were broadened by the contract, and recovery was allowed for coal and lumber used in and about the construction of the sewer.

We think this case correctly declares the law, and under that authority we affirm the judgment. *Frank, C.,* concurs.

PER CURIAM:—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.